**14-4467-cv**
**Jia Sheng v. MTBank Corporation**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: October 21, 2015          Decided: February 2, 2017)

Docket No.  14-4467-CV

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Jia Sheng,

            Plaintiff-Appellant,

            v.

M&TBank Corporation, Manufacturers & Traders Trust Company, d/b/a M&TBank,

            Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   KEARSE, WINTER, and CABRANES, Circuit Judges.

    Appeal from a judgment entered in the United States District Court for the Western District of New York (Hugh B. Scott, Magistrate Judge) after a jury verdict.  The jury rejected appellant's federal claims of disability discrimination, retaliation, and failure to accommodate.  Appellant argues that the district court erred by (i) admitting evidence of an offer of settlement in violation of Fed. R. Evid. 408, (ii) disqualifying her attorney and opposing counsel, (iii) not instructing jurors on the requirement of an interactive process under the Americans with Disabilities Act, and (iv) ruling as a matter of law on her

1

New York State Human Rights Law (NYSHRL) claim.  We vacate the judgment in part, insofar as it adopted the jury's verdict and the district court's disqualification order; dismiss the appeal in part, insofar as it pertains to claims under the NYSHRL; and remand for further proceedings consistent with this opinion.

GEORGE D. VALLAS, The Ottinger Firm, P.C., New York, NY, for Plaintiff-Appellant.

JUSTIN C. ELLER, Miles & Stockbridge, P.C., Baltimore, MD, for Defendants-Appellees.

WINTER, Circuit Judge:

Jia Sheng brought this action against appellees (collectively MTBank[1]), claiming violations of various state and federal statutes by not allowing her to work remotely when she became pregnant.  After the close of evidence, Magistrate Judge Scott ruled as a matter of law against appellant on a number of claims, while the jury found for MTBank on the remaining claims.

On appeal, appellant contends that the district court erred by:  (i) admitting evidence in violation of Fed. R. Evid. 408 that MTBank made an offer of reinstatement allowing her to work remotely, (ii) disqualifying the attorneys for both parties under the advocate-witness rule, (iii) not instructing jurors on her claim that MTBank violated the Americans with Disabilities Act of 1990 (ADA) by failing to engage in an interactive process, and

---

[1] Appellant named as defendants in her complaint "M&T Bank Corporation, and Manufacturers & Traders Trust Company d/b/a M&T Bank."  We refer to them collectively herein as "MTBank."

(iv) dismissing as a matter of law appellant's New York State Human Rights Law (NYSHRL) claim, which appellant argues had the same legal and factual underpinnings as her ADA claim that was presented to the jury.

We hold that (i) the district court abused its discretion in admitting evidence of the reinstatement offer because the offer was, as a matter of law, not unconditional;(ii) the district court erred in sua sponte disqualifying the attorneys, because the disqualification depended on the erroneous admission of evidence relating to the reinstatement offer; (iii) the jury instructions were not erroneous; and (iv) we lack jurisdiction over appellant's challenge to the district court's NYSHRL ruling.

We vacate the judgment in part, insofar as it adopted the jury's verdict and the district court's disqualification order; dismiss the appeal in part, insofar as it pertains to claims under the NYSHRL; and remand for further proceedings consistent with this opinion.

                              BACKGROUND

"In reviewing this record we construe all evidence, draw all inferences, and make all credibility determinations in favor of the party that prevailed before the jury." DiBella v. Hopkins, 403 F.3d 102, 110 (2d Cir. 2005).

In January 2010, appellant began her employment with MTBank in Buffalo, New York as a Lead on its Quality Assurance Test (QAT) team in the bank's Central Technology (CT) Department.  The

3

QAT team executes system testing of computer programs for bank applications. In March 2011, appellant decided to resign her position and relocate to Los Angeles, where her husband had taken a job. However, her supervisor, Monica Holcomb, suggested that she continue to work at MTBank remotely through the bank's Alternative Work Arrangement (AWA) policy. Under the AWA policy, "[a]n employee's failure to resume [a] traditional work schedule or location upon revocation of an AWA will be considered a voluntary resignation of employment." J. App'x at 77. Appellant accepted Holcomb's offer and began working remotely from California.

In the spring of 2012, MTBank's management began exploring a reorganization of the CT Department, including the QAT team. This reorganization was intended to facilitate the Voyager Project, a planned overhaul of MTBank's existing online banking system. On May 30, 2012, MTBank announced the reorganization to CT Department employees. In a meeting attended remotely by appellant, management explained that, in light of the reorganization, all AWAs would be reviewed. Later that day, Holcomb called appellant, who confirmed that she understood that her AWA status could be affected by the reorganization.

The next day, appellant notified Lonnie Basciani -- who had replaced Holcomb as appellant's supervisor and in turn reported to Holcomb -- that she was pregnant. Shortly thereafter, she expressed concern about her AWA policy. Management determined,

4

however, that team leads would need to be physically present in Buffalo at least two days per week in order to communicate and work directly with the individuals implementing the Voyager Project. At the time, appellant was the only employee on AWA status and not based in Buffalo. On June 27, 2012, Holcomb notified appellant that her AWA status would be altered, and that she would need to begin traveling to Buffalo.

The following day, on June 28, 2012, appellant emailed Holcomb and MTBank's Human Resources Department, requesting a meeting to discuss the possibility of delaying the start of her commute to Buffalo until after she gave birth. At a July 3, 2012 meeting with Holcomb, however, appellant was informed that her request to be exempted from traveling to Buffalo during the duration of her pregnancy was denied. Appellant was given a deadline of July 27 to confirm that she would begin reporting to Buffalo in early August.

On July 19, appellant submitted a letter from her obstetrician to Holcomb and MTBank's Human Resources Department, stating that, for health reasons, she should not engage in air travel for the duration of her pregnancy. After receiving this letter, Human Resources and MTBank management examined whether appellant could work on non-Voyager Project matters until she gave birth in December 2012. They concluded that there was not enough non-Voyager work to keep her occupied.

For the next eight weeks, appellant received minimal communication from MTBank, except for periodic directives that she continue working. Finally, on September 11, 2012, MTBank notified appellant that she should either permanently relocate to Buffalo within thirty days or apply for and, if eligible, take early short-term disability leave, allowing her to remain in California through the end of her pregnancy. If she chose neither of these options, she would be terminated and given eleven weeks of severance pay.

On September 14, 2012, appellant emailed MTBank, rejecting its offers. She explained that she was "not able to relocate to Buffalo within the next 30 days due to medical restrictions on [her] ability to travel during [her] pregnancy." J. App'x at 78. On September 20, 2012, Ariel Y. Graff, an attorney for appellant, wrote a letter to MTBank's General Counsel stating that appellant had been "effectively terminated . . . because of her pregnancy . . . Constitut[ing] unlawful discrimination on the basis of gender, pregnancy and pregnancy-related medical conditions." Id. at 60-62. He also stated that he was writing, in part, "to offer the Company and potential individually named Defendants the opportunity to avoid a costly legal action that will result in substantial liability and adverse publicity for the Company and its executives." Id. at 62.

The letter was forwarded to MTBank's vice-president and counsel, Sean Ronan, who spoke with Graff by telephone on October

12, 2012.  At the start of the conversation, Graff made clear, and Ronan agreed, that Rule 408 of the Federal Rules of Evidence, Fed. R. Evid. 408 (providing that offers of settlement are inadmissible in later proceedings under certain conditions), would govern the conversation.  Graff then made a settlement offer demanding $200,000.  Ronan responded that the bank was not prepared to agree to such a monetary settlement.  Instead, he suggested that appellant be reinstated and that she be allowed to work remotely from Los Angeles for the remainder of her pregnancy.  No explicit statement was made that the reinstatement offer was conditioned upon the execution of a release of appellant's claims for monetary damages.  Later, in a letter to the Equal Employment Opportunity Commission (EEOC), Ronan described his oral offer to appellant as follows:  "Our decision to offer [appellant] the accommodation she had demanded was not unlike any other offer of compromise [MTBank] -- and a myriad of other parties -- may offer to stave-off the vicissitudes of litigation.  Distasteful and disruptive as it may have been, we ultimately decided to capitulate to [appellant's] demand solely because we recognized that it would be better than incurring time and expense fighting the issue."  J. App'x at 75.

On November 8, 2012, appellant filed a Charge of Discrimination with the EEOC.  On the same day, appellant filed the present action, eventually amending her complaint to allege that MTBank had:  (i) engaged in unlawful interference under the

7

Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., the California Family Rights Act, Cal. Gov't Code § 12945.2, and the California Pregnancy Disability Leave Law, Cal. Gov't Code § 12945(a); (ii) unlawfully retaliated under the FMLA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the ADA, 42 U.S.C. § 12101 et seq., and the NYSHRL, N.Y. Exec. Law § 290 et seq.; (iii) unlawfully discriminated under Title VII, the ADA, and the NYSHRL; and (iv) failed to provide a reasonable accommodation under the ADA, the NYSHRL, and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940.

Before trial, appellant filed a motion in limine with the district court, seeking to exclude "[a]ll offers made by [MTBank] to reinstate [appellant] in exchange for settling the instant action" pursuant to Federal Rule of Evidence 408. See J. App'x at 8. MTBank opposed the motion. It argued, first, that the reinstatement offer was admissible to show that appellant failed to mitigate damages and, second, should not be excluded under Rule 408 because the offer was unconditional, i.e., was not contingent on appellant's releasing MTBank from liability.

After an evidentiary hearing, the district court denied appellant's motion. The court reasoned that, under Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992), an offer of settlement made by defendant's counsel to plaintiff's counsel is presumed to be inadmissible unless there is "convincin[g evidence] that the offer was not an attempt to compromise the

8

claim." Sheng v. M & T Bank Corp., 2014 WL 5500632, at *3 (W.D.N.Y. Oct. 30, 2014). The court suggested that Pierce may no longer be good law in light of our decision in Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d Cir. 1997), which validated the proposition that an unconditional offer "cannot be construed as an offer to settle or compromise under Rule 408." Sheng, 2014 WL 5500632, at *3. The district court concluded that there was "no evidence to suggest that the offer of reinstatement was conditioned upon the compromise of the plaintiff's claims," and, therefore, the evidence of the reinstatement offer was admissible to show that appellant had not attempted to mitigate damages.[2] Id. The court further ruled that both Graff and Ronan were disqualified from acting as trial counsel under the advocate-witness rule because they were the only witnesses who could testify before the jury as to whether MTBank extended an unconditional offer and whether appellant unreasonably rejected that offer. Id. at *4.

A jury trial began on November 3, 2014. After the close of evidence, the district court granted MTBank's motion for judgment

---

[2] The court ultimately allowed the jury to resolve "questions of fact" over whether MTBank "made an unconditional offer of reinstatement and whether the plaintiff reasonably refused the offer." Id. at *4 & n.6. This procedure followed Fed. R. Evid. 104, which directs that the trial court decide "preliminary questions" of fact governing issues of admissibility -- here, whether the reinstatement offer was conditional or not -- but allow the jury to determine the same facts where the same preliminary questions of fact go to the merits -- here, whether appellant failed to mitigate damages by declining an unconditional offer of reinstatement.

9

as a matter of law pursuant to Fed. R. Civ. P. 50(a) on a number of appellant's claims, including the failure to accommodate under the NYSHRL. The court also declined to instruct the jury that the ADA imposes an affirmative duty on employers to engage in an interactive process with all employees who have requested accommodations.

On November 7, 2014, the jury returned a verdict for MTBank on the four remaining claims: interference under the FMLA, retaliation under the FMLA, failure to accommodate under the ADA, and failure to accommodate under the California FEHA. On December 2, 2014, appellant appealed from "the jury verdict entered in this action on the 7th day of November 2014."

DISCUSSION

a) <u>Admissibility of the Reinstatement Offer and Attorney Disqualification</u>

Appellant argues that the district court abused its discretion by admitting evidence of MTBank's offer of reinstatement. We agree and find that this error was not harmless. Because the admission of the evidence served as the basis for Graff and Ronan's disqualification, they may appear in subsequent proceedings.

We review evidentiary rulings for abuse of discretion, <u>United States v. Cuti</u>, 720 F.3d 453, 457 (2d Cir. 2013), a standard that is met only when the district court "based its ruling on an erroneous view of the law or on a clearly erroneous

10

assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions," In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, citations, and alterations omitted).  We will not vacate for a new trial, however, if any error was harmless, i.e., where we "can conclude with fair assurance that the evidence did not substantially influence the jury."  United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009) (internal quotation marks omitted).

Rule 408(a) prohibits, inter alia, the admission of "[e]vidence of the following . . . to prove or disprove the validity or amount of a disputed claim . . . :  (1) . . . offering . . . valuable consideration in . . . attempting to compromise the claim . . . ."  Fed. R. Evid. 408(a)(1) (emphasis added).

In Pierce, we held that "where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."  955 F.2d at 827.  The Pierce presumption can be rebutted only if "[t]he party seeking admission of [the] offer . . . demonstrate[s] convincingly that the offer was not an attempt to compromise the claim."  Id.

We do not agree with the district court that Pierce is "no longer . . . good law" in light of our decision in Lightfoot. See Sheng, 2014 WL 5500632, at *3.  Lightfoot's only citation to

*Pierce* approved the earlier decision. See 110 F.3d at 909 (citing *Pierce*, 955 F.2d at 826-29). Indeed, *Lightfoot* simply stated the obvious: "By definition, an unconditional offer may not require the employee to abandon or modify his suit, and . . . therefore cannot be considered an offer of settlement or compromise." Id.

Analogizing to *Pierce*, we conclude that the district court erred in admitting evidence of MTBank's reinstatement offer. While *Pierce* uses the word "presumed," it did not relegate the issues to the tangled analysis sometimes employed in the area of legal presumptions. See generally Fed. R. Evid. 301, Advisory Committee notes. Rather, it simply recognized the self-evident inference that, even when a lawyer informs counsel for a (potential) plaintiff that the (potential) defendant agrees to all relief believed to be demanded, some sort of release, at the very least, is expected in return. This expectation, which is almost universal, absent express reservations to the contrary, renders the offer conditional and subject to exclusion under Rule 408.

To be sure, there may be exceptional circumstances in which the parties understand that an unconditional offer is being made, but no such circumstances exist here. Appellant was represented by counsel who initiated the first steps toward the litigation by sending a letter dated September 20, 2012 to MTBank's General Counsel alleging unlawful discrimination on the basis of gender

12

and pregnancy.  The letter prompting the call was marked "CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY," and the two attorneys, Graff and Ronan, began their October 12, 2012 call by agreeing that Rule 408 would govern the conversation.  Of course, such an agreement by itself does not preclude a party from making an unconditional offer, but it does suggest that the parties here were hoping to take advantage of Rule 408's protection -- protection available only for conditional offers.  Further, although Ronan had not explicitly made reinstatement contingent upon the execution of a release and waiver of claims, the reinstatement offer was made immediately after Graff's settlement offer of $200,000 was rejected.

Moreover, Ronan himself admitted the offer was conditioned on appellant's forgoing litigation when he told the EEOC that "[MTBank's] decision to offer [appellant] the accommodation she had demanded was not unlike any other offer of compromise [MTBank]--and a myriad of other parties--may offer to stave-off the vicissitudes of litigation.  Distasteful and disruptive as it may have been, [MTBank] ultimately decided to capitulate to [appellant's] demand solely because we recognized that it would be better than incurring time and expense fighting the issue." J. App'x at 75.  This constitutes an admission by MTBank that the reinstatement offer was conditioned upon dropping the lawsuit and its monetary demand, eliminating, as a matter of law, any factual issue as to whether the offer was conditional.

13

While "evidentiary rulings are subject to harmless error analysis," Mercado, 573 F.3d at 141, our review of the record convinces us that this error was hardly harmless. See, e.g., J. App'x at 94 (MTBank's opening statement ("[Appellant] was offered ultimately exactly what she had asked for. . . . So, why are we standing here today if that's what she was offered?")); id. at 260 (MTBank's closing statement ("The bottom line I'm going to offer is, [appellant's] attorneys know that the offer is a game changer. . . . You don't always get what you want exactly when you want it, but here, [appellant] was offered exactly what she asked for.")). The reinstatement offer may, therefore, have substantially affected the jury's verdict.

Accordingly, we vacate the judgment insofar as it adopted the jury's verdict. In addition, we also vacate the appeal insofar as it adopted the district court's order sua sponte disqualifying Graff and Ronan, because that order rested on the erroneous admission of evidence relating to MTBank's reinstatement offer.

b) The Jury Instructions

"We review a claim of error in the district court's jury instructions de novo, disturbing the district court's judgment only if the appellant shows that the error was prejudicial in light of the charge as a whole." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 152-53 (2d Cir. 2014) (internal quotation marks omitted). "A jury instruction is erroneous if it misleads the

14

jury as to the correct legal standard or does not adequately inform the jury on the law." Perry v. Ethan Allen, Inc., 115 F.3d 143, 153 (2d Cir. 1997) (internal citation omitted). We will not require a new trial "[i]f the instructions, read as a whole, presented the issues to the jury in a fair and evenhanded manner." Lore v. City of Syracuse, 670 F.3d 127, 156 (2d Cir. 2012).

Before this case was submitted to the jury, appellant objected to the district court's proposed jury instructions on the ground that the instruction on the ADA failure-to-accommodate claim did not "include within the definition of failure to accommodate a failure to engage in the interactive process with the employee in violation of [the] Code of Federal Regulations and Brady v. Walmart." J. App'x at 251. Appellant presses this contention on appeal, arguing in effect that a defendant's failure to engage in an interactive process is alone sufficient to support a failure-to-accommodate claim under the ADA. We disagree. We do hold, however, that district courts may admit an employer's failure to engage in an interactive process as evidence of discrimination under the ADA.

"Discrimination in violation of the ADA includes, inter alia, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C.

15

§ 12112(b)(5)(A)). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following:

> (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McBride, 583 F.3d at 96-97 (internal quotation marks omitted).

In McBride, we agreed with "each of our sister Circuits . . . that failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible." Id. at 100-01 (collecting cases). Therefore, there is no valid independent claim under the ADA for failure to engage in an interactive process. See Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 97 (2d Cir. 2015) ("[Plaintiff-employee] contends that [defendant-employer] failed to engage in [an interactive] process, and advances an argument that this failure gave rise to an independent cause of action [under the ADA]. We disagree."). We clarify, however, that an employer's

16

failure to engage in a good faith interactive process[3] can be introduced as evidence tending to show disability discrimination, McBride, 583 F.3d at 101 (citing Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), rev'd on other grounds, 535 U.S. 391 (2002); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1020-21 (8th Cir. 2000); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 952 (8th Cir. 1999); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317-20 (3d Cir. 1999)), and that "the employer has refused to make [a reasonable] accommodation," 583 F.3d at 96-97.

The regulations implementing the ADA are consistent with our view that a failure to engage in a good faith interactive process is not an independent violation of the ADA. They state that, "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [qualified] individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (emphasis added). Even where the employer has refused to interact with the claimant, a violation of the ADA requires a showing of a disability as defined by the ADA, proof

---

[3] An employer engages in an interactive process by, for example, "meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 218-19 (2d Cir. 2001) (internal quotation marks and alterations omitted).

of qualification, and the existence of a reasonable accommodation. See McBride, 583 F.3d at 101 ("[A]n employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue.").

We see no conflict between this proposition and our ruling with regard to the exclusion of Ronan's offer under Rule 408, discussed supra, and admitting evidence of MTBank's failure to discuss possible accommodations. An offer of an accommodation conditioned upon the dropping of monetary claims does not fulfill the requirements of the ADA as to an interactive process. The Act clearly imposes a duty to provide an accommodation in job requirements, if feasible. The discussion obligation relates only to the feasibility of accommodating employer/employee needs. Conditioning proposed accommodations on the dropping of claims does not fulfill that obligation.

c) The NYSHRL Claim

Appellant contends that the district court erred in granting MTBank's motion for judgment as a matter of law, Fed. R. Civ. P. 50(a), on her failure to accommodate claim under the NYSHRL –– arguing that this claim had the same factual premises and was governed by the same legal principles as her ADA failure-to-accommodate claim, which was allowed to proceed to trial.

18

However, appellant did not properly preserve this issue for appeal.

A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The requirement is jurisdictional, Gonzalez v. Thaler, 132 S. Ct. 641, 651-52 (2012), but "it is well settled that courts should apply a liberal interpretation to that requirement," Conway v. Vill. Of Mount Kisco, 750 F.2d 205, 211 (2d Cir. 1984).

Here, appellant's Notice of Appeal appealed "from the jury verdict entered in this action on the 7th day of November 2014," not from the district court's prior judgment as a matter of law. J. App'x at 272 (emphasis added). Indeed, appellant argued for the first time in her opening brief to this court that the district court erred in its entry of judgment on the NYSHRL claims. As a result, we find that appellant did not properly preserve her argument that the district court erred in granting MTBank's Rule 50(a) motion.

CONCLUSION

For the foregoing reasons, we vacate the judgment in part, insofar as it adopted the jury's verdict and the district court's disqualification order; dismiss the appeal in part, insofar as it pertains to claims under the NYSHRL; and remand for further proceedings consistent with this opinion.