16-2556-cv
Flieger v. E. Suffolk BOCES

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 1st day of June, two thousand seventeen.

Present:     JON O. NEWMAN,
             ROSEMARY S. POOLER,
             PETER W. HALL,
                      *Circuit Judges*.

_____

JEANNE FLIEGER,

                      *Plaintiff-Appellant*,

             v.                                              16-2556-cv

EASTERN SUFFOLK BOCES,

                      *Defendant-Appellee*.

_____

Appearing for Appellant:          Jonathan A. Tand, Jonathan A. Tand and
                                  Associates, P.C., Garden City, NY.

Appearing for Appellee:           Adam I. Kleinberg, Sokoloff Stern LLP, Carle
                                  Place, NY.

Appeal from the United States District Court for the Eastern District of New York (Seybert, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Plaintiff-Appellant Jeanne Flieger appeals the June 24, 2016 judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*) granting summary judgment in favor of Defendant-Appellee Eastern Suffolk BOCES ("BOCES") on Flieger's discrimination, retaliation, hostile work environment, and failure to provide reasonable accommodation claims under the Americans with Disabilities Act ("ADA"). *Flieger v. E. Suffolk BOCES*, 13-CV-6282, 2016 WL 3527519, at *1 (E.D.N.Y. June 23, 2016). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review a district court's grant of summary judgment *de novo*." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (citation omitted).

"ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015). In order to establish a prima facie case, the plaintiff must show by a preponderance of the evidence that: "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). "Under the last element, a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (internal quotation marks omitted).

Flieger's September 2011 back injury does not constitute a disability under the ADA. "The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 159 (2d Cir. 2016) (internal quotation marks omitted) (citing 42 U.S.C. § 12102(1)(A)). On the day that Flieger injured herself in September 2011, Flieger stated in her deposition that she did not leave work early, but rather took some Aleve and kept working. Flieger explained that she came back to work the next day and required no time off as a result of her injury. Flieger also reported that she continued to be able to lift cases of water at work after her injury. Based on Flieger's explanation of her own limitations after her September 2011 injury, we conclude that Flieger was not substantially impaired in any major life activity.

Flieger argues that she suffered three adverse employment actions as a result of ADA disability discrimination: (1) denial of a Summer 2011 summer school position; (2) transfer to Josette Celiberti's classroom; and (3) transfer to Joe Sicuranza's classroom. "To qualify as an adverse employment action, the employer's actions toward the plaintiff must be materially adverse with respect to the terms and conditions of employment." *Davis*, 804 F.3d at 235 (internal quotation marks omitted). In addition, it is axiomatic that the adverse employment action must "t[a]k[e] place under circumstances giving rise to an inference of discrimination" in order to be actionable under the ADA. *Id.*

2

The denial of the Summer 2011 summer school position does not constitute an actionable adverse employment action under the ADA because there is no inference that discrimination was the reason for the denial of the position. Flieger explained in her deposition that she understood from BOCES and her union that employment for a summer teaching position was discretionary and not guaranteed. The express terms of the Hiring Guidelines for Summer 2011 indicated that Flieger would be at a disadvantage if she missed more than seven days of school during the 2010-11 school year. Once the number of Flieger's used sick days was decreased at her request, she was offered a summer position that was then available. This Court can find no inference of discrimination under these circumstances.

With respect to the two challenged transfers, we have explained that "a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006). "Moreover, we have held that an involuntary transfer may constitute an adverse employment action if the plaintiff shows that the transfer created a materially significant disadvantage with respect to the terms of her employment." *Id.* at 207 (internal quotation marks, brackets, and emphasis omitted). In contrast, "a transfer that does not change the conditions of employment is a mere inconvenience or an alternation of job responsibilities, and hence is not materially adverse." *Id.* (internal quotation marks and brackets omitted). Thus, "if a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer an adverse employment action." *Id.* (internal quotation marks and brackets omitted).

Flieger presented no facts in her summary judgment motion and no argument before this Court that would suggest the transfer to Celiberti's classroom involved a demotion, a disadvantage, or a setback with respect to her career. Instead, at the time the transfer was made, Flieger only expressed a concern about Celiberti being a low talker. Flieger never expressed any other concern about transferring to Celiberti's classroom, and specifically never expressed that she felt the transfer was anything other than a lateral move (notwithstanding that she would have preferred not to have been transferred). The transfer to Celiberti's classroom was therefore not an adverse employment action.

With respect to Flieger's transfer to Sicuranza's classroom, assuming for the purposes of argument that Flieger's allegations that Principal Nancy Smalling had "refus[ed] to speak clearly to [Flieger]" prior to the transfer and had declined to consider Flieger's requested transfers are sufficient to meet Flieger's burden at the *prima facie* stage, Appellant's Br. at 16, 20, BOCES has proffered a legitimate, non-discriminatory reason for Flieger's transfer. Smalling expressed concern about Flieger's "behavior with adults" and wanted to keep Flieger in a supervised setting. App'x at 564-65. Both of the alternative transfers that Flieger proposed were unsupervised. Smalling decided Flieger would not be an appropriate fit for those programs and accordingly transferred Flieger to Sicuranza's classroom instead.

Flieger has failed to meet her burden of persuasion to show that BOCES' proffered legitimate reasons for the transfer are pretextual. *See Weinstock v. Columbia Univ.*, 224 F.3d 33,

42 (2d Cir. 2000) (explaining a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action" (internal quotation marks, brackets, and citation omitted)). Flieger has failed to offer any evidence that Smalling discriminated against Flieger on the basis of her hearing loss—indeed, Flieger explained at her deposition that Smalling helped her receive funds to travel to the Mayo Clinic and Flieger sent Smalling an incredibly effusive e-mail after her transfer to Sicuranza's classroom thanking Smalling for transferring her and referring to the change in glowingly positive terms. The e-mail constitutes uncontroverted evidence that Flieger did not believe she had been discriminated against in being transferred to Sicuranza's classroom at the time she was transferred. Flieger has also failed to offer any evidence that Smalling did not have concerns about Flieger's work in an unsupervised setting. Although Flieger points to her strong evaluations from previous years, receipt of strong reviews in a supervised setting in the past does not equate to an individual necessarily being considered fit to perform in an unsupervised setting given more recent performance concerns.

Claims of retaliation under the ADA are analyzed under the same burden-shifting framework as are ADA discrimination claims. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). "In order to establish a prima facie case for retaliation, [a plaintiff] must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [the plaintiff]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* Activities protected by the ADA include complaints of ADA discrimination, including complaints on a good faith belief that the employer's actions violated the ADA, and requests for reasonable accommodations. *See, e.g.*, *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) (requests for accommodations are protected activity); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (complaints based on a good faith belief that employer is violating the ADA are protected activity).

Although there is an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a "but for" cause of the adverse employment action or merely a "motivating factor," we need not decide this point of law as Flieger's ADA retaliation claim fails under both tests. *See, e.g.*, *Eisner v. Cardozo*, No. 16-872-cv, 2017 WL 1103437, at *1 (2d Cir. Mar. 24, 2017) (summary order).

Flieger identifies as adverse employment actions for her retaliation claim the same three actions that she identified under her discrimination claim. As with Flieger's discrimination claim, the denial of a Summer 2011 summer school position does not give rise to an inference of retaliation because Flieger's visit to the Mayo Clinic neither constituted a complaint of ADA discrimination nor a request for accommodation and thus was not a protected activity. *See, e.g.*, *Weixel*, 287 F.3d at 149 (requests for accommodations are protected activity); *Weissman*, 214 F.3d at 234 (complaints based on a good faith belief that employer is violating the ADA are protected activity). Similarly, Flieger's transfer to Celiberti's classroom was not an adverse employment action and therefore cannot be the basis for an ADA retaliation claim. With respect to Flieger's transfer to Sicuranza's classroom, the district court correctly determined that Flieger had stated a *prima facie* case based on the temporal proximity between her complaint about

4

Celiberti's comment with respect to Flieger's hearing and Flieger's transfer. BOCES proffers the same legitimate, non-retaliatory reasons for the transfer as it did with respect to Flieger's discrimination claim. And, again, Flieger has failed to meet her burden of persuasion to show that BOCES' reasons are pretextual as she has provided no more evidence than she did with respect to her discrimination claim.

The Second Circuit has "not yet decided whether a hostile work environment claim is cognizable under the ADA." *Robinson v. Dibble*, 613 F. App'x 9, 12 n.2 (2d Cir. 2015) (summary order). "For purposes of this discussion, we assume, without deciding, that it is." *Id.*

"To establish a prima facie case of hostile work environment, the plaintiff must show that the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (internal quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (internal quotation marks omitted). "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Id.*

Flieger argues that she suffered from a hostile work environment based on "the circumstances of [her] tenure in Celiberti's classroom." Appellant's Br. at 26. Flieger, however, stated at her deposition that Celiberti did not learn about Flieger's ADA-covered disability until October 26, 2011 when Flieger told Celiberti that she has hearing loss. The only instance of Celiberti's hostile conduct that occurred *because of* Flieger's protected disability, therefore, was Celiberti's comment immediately after learning of Flieger's disability that she "didn't ask for a deaf assistant." App'x at 247; *see Tobert*, 790 F.3d at 439 (explaining plaintiff "must show that the hostile conduct occurred because of a protected characteristic"). This comment, while inappropriate, does not rise to the level of severity required in order for a single comment to support a claim for hostile work environment. In addition, Flieger conceded at her deposition that she was transferred out of Celiberti's classroom either on the same day or within a few days of Celiberti's comment. Flieger makes no allegations of any discriminatory or hostile conduct by Sicuranza, even though her brief states the hostile work environment continued "until December of 2011." Appellant's Br. at 26. Indeed, Flieger even thanked Smalling for transferring her into Sicuranza's classroom, explaining she felt she was being "treated with respect and as an equal." App'x at 800. Flieger has failed to state a *prima facie* case of hostile work environment.

"Discrimination in violation of the ADA includes, *inter alia*, not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017) (internal quotation marks omitted). "A qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* (internal quotation marks omitted) (citing 42 U.S.C. § 12111(8)). "In evaluating whether a particular job function is essential, this Court considers the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions."

5

*Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (internal quotation marks omitted). "Of course, a reasonable accommodation can never involve the elimination of an essential function of a job." *McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013) (internal quotation marks and brackets omitted).

As set forth in Flieger's discussions with BOCES, and as she does not contest, Flieger is currently unable to physically hold or escort a student in danger of causing injury to him or herself or others, or perform or administer crisis intervention or prevention techniques because she cannot engage in any kind of restricting. Flieger also does not contest, and readily admits, that she is presently unable to assist or work with any students who are in wheelchairs. As an accommodation for her present disability, Flieger asked to be placed in a role in which she will never be required to work with wheelchair-bound students or be faced with a student who needs to be restrained in order to protect that student, to protect other students, to prevent a crisis situation, or to diffuse a crisis situation. These tasks, however, comprise seven of the top eleven bullet points on BOCES' written job description for the Teaching Assistant position. In addition, Jill Diamond, a school personnel officer responsible for Teaching Assistants at BOCES, testified that the ability to restrain a student was essential as "every single person that is staffing [a BOCES] classroom needs to be able to intervene in a situation that may turn into a crisis or may be a crisis in process." App'x at 683-84. Flieger also conceded in her deposition that the ability to restrain a student was part of a BOCES Teaching Assistant's job regardless of to what room the Teaching Assistant was assigned. Flieger further noted that she had had to restrain a handful of children while she was employed as a Teaching Assistant at BOCES, and Flieger's own experience with wheelchair-bound students indicates that assisting such students is not an out of the ordinary task that Teaching Assistants are required to perform. Flieger, therefore, has failed to meet her burden of identifying an accommodation that would allow her to continue to perform all of the essential functions of the Teaching Assistant job she once held. *See McMillan*, 711 F.3d at 127.

We have considered the remainder of Flieger's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6