18-3316-cr
*United States v. Pettway*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

R ULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. C ITATION TO A SUMMARY ORDER FILED ON OR AFTER J ANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY F EDERAL R ULE OF A PPELLATE P ROCEDURE 32.1 AND THIS COURT'S L OCAL R ULE 32.1.1. W HEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE F EDERAL A PPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand twenty-one.

PRESENT:   DENNY CHIN,
           SUSAN L. CARNEY,
           STEVEN J. MENASHI,
                     *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                     *Appellee,*


            -v-                                          18-3316-cr

DEMETRIUS BLACK, DEE BLACK, TYRONE
BROWN, AKA Ty Boog, TARIQ BROWN, AKA
Reek, AKA Reek Havick Boog, AKA Tyriq Brown,
QUINTON THOMPSON, AKA Q, EDDIE ALLEN,
AKA Pow Pow, AKA Bundles, MONTELL JONES,
AKA Telly, RAYMEL WEEDEN, AKA Ray Deuce,
DERRICK RAMOS, AKA Little D,
                     *Defendants,*

KENNETH PETTWAY, JR., AKA KPJ,

                                  *Defendants-Appellants.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR APPELLEE: | Monica J. Richards, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, New York. |
| FOR DEFENDANT-APPELLANT Kenneth Pettway, Jr. | Robert C. Singer, Singer Legal PLLC, Williamsville, New York. |

Appeal from the United States District Court for the Western District of New York (Skretny, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings.

Defendant-appellant Kenneth Pettway, Jr., appeals from a judgment of the district court entered November 9, 2018 convicting him, after a jury trial, of two counts of narcotics violations (Counts 1 and 3), possession of firearms and ammunition by a convicted felon (Count 5), and two counts of possession of firearms in furtherance of a drug trafficking crime (Counts 2 and 4), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii), (b)(1)(C) and 18 U.S.C. §§ 922(g)(1), 924(a)(2), (c)(1)(A)(i), (c)(1)(C)(i), 2. He was sentenced to 480 months' imprisonment and five years' supervised release. On

---

\*      The Clerk of the Court is respectfully requested to amend the official caption of this action to conform to the caption listed above.

appeal, Pettway argues that (i) his right to a speedy trial was violated; (ii) the district court erred in denying his motion to suppress; (iii) the district court improperly instructed the jury on the definition of "in furtherance" of; (iv) he is entitled to a sentence reduction based on the First Step Act of 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (the "First Step Act"); (v) the government failed to prove that he had sufficient knowledge of his prior gun conviction, as required by the Supreme Court's subsequent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019); (vi) the district court erred in giving him a leader enhancement at sentencing; and (vii) he should have been charged with only one § 924(c) offense. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We delayed our decision in this case because the *Rehaif* issue had been raised in several cases in this Court preceding this one.[1] Those cases have now been decided, and in accordance with those decisions, we conclude that the felon-in-possession conviction must be vacated and the case remanded. We affirm as to the remaining claims, except that we do not reach the First Step Act issue. As we are remanding in light of *Rehaif*, we leave it to the district court to decide the applicability of the First Step Act in the first instance.

---

[1]    In a summary order filed August 6, 2020, we severed and resolved the appeal of the co-defendant Rayshod Washington. *See United States v. Washington*, 814 F. App'x 664 (2d Cir. 2020) (summary order).

*BACKGROUND*

Pettway was the leader of the Bailey Boys, a violent street gang that sold drugs and committed robberies in Buffalo, New York. Another gang member, Demetrius Black, lived in an apartment at 23 Roosevelt Avenue ("23 Roosevelt"), which served as Pettway and Black's stash house. The two sold drugs out of 23 Roosevelt. On January 9, 2012, Erie County Deputy Sheriff-Detective Warren Hawthorn of Erie County secured a search warrant for 23 Roosevelt. The warrant was based on Hawthorn's affidavit and an *in camera* interview of a cooperating witness. The witness admitted to having purchased cocaine from Pettway over the prior several months, and he explained that Pettway sold cocaine out of 23 Roosevelt. The warrant was executed on January 18, 2012, and local law enforcement recovered small amounts of cocaine and heroin, a razor blade, roughly 50 small Ziploc bags, two digital scales, a loaded 9 mm pistol, and a loaded .32 caliber pistol, as well as ammunition. Pettway and Black were arrested.

Pettway was indicted on March 27, 2012, and prosecutors superseded his indictment four times, with the fourth and final indictment being issued on April 23, 2013. For the years following the initial indictment, the parties engaged in extensive motion practice. Pettway brought motions to compel discovery and other substantive motions, including motions to suppress the evidence recovered at 23 Roosevelt. Throughout this period, time was excluded for speedy trial purposes, and trial was

-4-

scheduled for October 2016. Shortly before trial, however, the government discovered that it made a mistake describing a gun in the fourth superseding indictment and, after the district court did not allow it to offer the correct gun as Rule 404(b) evidence, it filed an interlocutory appeal. We upheld the government's appeal in part and denied it in part. *United States v. Brown*, 691 F. App'x 666 (2d Cir. 2017).

In January 2017, while the government's appeal was pending, Pettway invoked his right to a speedy trial for the first time. On June 16, 2017, Pettway moved to dismiss the indictment on speedy trial grounds. The district court denied his motion and set trial for September 2017. In the summer of 2017, the government located a missing witness ("CW#1"). As a consequence, the district court postponed the trial to allow the defense to investigate and prepare. On October 5, 2017, after learning the witness's identity, defense counsel revealed there was a conflict because he had previously represented the witness. Accordingly, he was replaced by a new attorney. On May 1, 2018, a few weeks before the rescheduled trial, Pettway once again moved to dismiss his case on speedy trial grounds. His motion was denied, and he was tried and convicted later that month. Pettway was sentenced on October 15, 2018. This appeal followed.

## DISCUSSION

### 1.    *Rehaif*

In *Rehaif*, the Supreme Court held that "the word 'knowingly' [as used in §

924(a)] applies both to the defendant's conduct and to the defendant's status."  139 S. Ct.

at 2194.  Accordingly, to convict a defendant in accordance with *Rehaif*, the government

must show that "the defendant knew he possessed a firearm and also that he knew he

had the relevant status when he possessed it."  *Id*.  The district court did not charge the

jury that the government had to prove that Pettway knew of his "status."

Pettway did not object to the district court's charge, and thus we review

under the plain error standard:  "whether (1) there is an error; (2) the error is clear or

obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's

substantial rights; and (4) the error seriously affects the fairness, integrity or public

reputation of judicial proceedings."  *United States v. Miller*, 954 F.3d 551, 557-58 (2d Cir.

2020) (internal quotation marks and citation omitted).

Our decisions applying *Rehaif* in this context have focused on the third

and fourth prongs of plain error review, and considered whether the record contained

sufficient evidence to show that the defendant was aware of his "status."  In *United*

*States v. Walker*, we affirmed the conviction because the evidence showed that Walker

had at least five prior felony convictions, including one for felon-in-possession of a

firearm, and four of the prior convictions resulted in sentences of more than a year.  974

-6-

F.3d 193, 202-03 (2d Cir. 2020).  Hence, we concluded that the evidence showed that Walker was "well aware" of his status.  *Id*. at 202.  In contrast, in *United States v. Morales*, we found plain error and remanded where Morales's stipulation "did not mention the duration of her sentence or anything else indicative of her subjective knowledge at the time she possessed a gun as to whether she had been convicted of a crime punishable by a term of imprisonment exceeding on[e] year."  819 F. App'x 53, 54 (2d Cir. 2020) (summary order); *accord United States v. Johnson*, 820 F. App'x 29 (2d Cir. 2020) (summary order) (vacating and remanding in light of *Rehaif*).  Further, Morales was sentenced for the predicate offenses "to a conditional discharge, meaning she served no carceral or probationary sentence."  *Morales*, 819 F. App'x at 55.  Hence, it was not at all apparent from the record that Morales knew of her "status."

This case is more like *Morales* than *Walker*.  Pettway stipulated that he had been convicted of "a felony offense, that is, a crime punishable by imprisonment for a term exceeding one year," App'x at 2569, but this language is similar to the language in Morales's stipulation, which we found non-dispositive.  Moreover, Pettway's predicate offense resulted only in a six-month term of imprisonment, not a year.  And unlike Walker, Pettway does not have a history of serious convictions.  Accordingly, we conclude that the record did not contain sufficient evidence to show that Pettway was on notice of his status as a person who was convicted of a felony punishable by a sentence exceeding one year.  This error affected Pettway's substantial rights, as well as

-7-

the fairness and integrity of the judicial proceedings. Finding plain error, we therefore vacate the judgment of conviction as to Count 5 and remand for the district court to consider the issue in light of the recent caselaw.

2.    *First Step Act*

Prior to December of 2018, a defendant was subject to a twenty-five-year mandatory minimum for two § 924(c) convictions even when they arose from the same indictment. *Deal v. United States*, 508 U.S. 129, 132 (1993) (interpreting earlier version of § 924(c)). On December 21, 2018, Congress passed the First Step Act, which, *inter alia*, amended § 924(c)(1)(C) to eliminate the stacking of multiple convictions arising from the same indictment.[2]

In these proceedings, Pettway was convicted of two § 924(c) counts and sentenced to five years for the first conviction (Count 2) and twenty-five years for the second conviction (Count 4), to run consecutively to each other and to all other sentences. He argues that, pursuant to the First Step Act, he is entitled to have the twenty-five year sentence on Count 4 vacated.

---

[2]    The relevant language of the First Step Act provides:

> Section 924(c)(1)(C) of Title 18, United States Code, *is amended*, in the matter preceding clause (i), by striking "second or subsequent conviction under this sub-section" and inserting "violation of this subsection that occurs after a prior conviction under this subsection becomes final."

132 Stat. 5221-22 (emphasis added). *Id.* at § 403 (emphasis added).

As we are vacating Pettway's conviction on Count 5 and remanding for a *de novo* resentencing in light of *Rehaif*, we leave it to the district court to decide, after consulting with the parties on remand, the applicability of the First Step Act to this case. In the meantime, we vacate the sentences on all counts.

### 3.     Remaining Claims on Appeal

#### A.  Speedy Trial

"We review the district court's findings of fact as they pertain to a speedy trial challenge for clear error and its legal conclusions *de novo*." *United States v. Lynch*, 726 F.3d 346, 351 (2d Cir. 2013). To determine whether a defendant's right to a speedy trial has been violated, "[w]e consider four factors: the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No one factor is dispositive. *Id*.

The delay in this case -- over six years -- was presumptively prejudicial to Pettway. But this alone cannot carry a speedy trial violation. Instead, we are required to examine the remaining *Barker* factors. *Black*, 918 F.3d at 254. Here, the delay is attributable to both Pettway and the government. For his part, Pettway filed numerous motions and requested several adjournments. For its part, the government's error on the fourth superseding indictment delayed the trial significantly, and further delay resulted when the government located a witness who had previously been represented

by Pettway's attorney, resulting in the attorney's disqualification. Importantly, Pettway did not assert his right to a speedy trial until more than four years after he was arrested, having agreed in the interim to delays that were of his own making. Although he asserted this right again shortly before trial, the fact that it took him so long to raise the issue weighs heavily in the government's favor.

Finally, Pettway has not shown that he was significantly prejudiced by the delay. *See Barker*, 407 U.S. at 532. Pettway was not incarcerated for a vast majority of the time that he was awaiting trial. And while the specter of going to prison was undoubtedly stressful, Pettway was primarily on home confinement while awaiting trial. Although Pettway asserted that he and his family suffered stress and economic harm, his actions, which included selling his music and making a rap video in which he showed off his ankle bracelet, tell a different story. Lastly, Pettway did not show that his defense was significantly hindered because of the delay. Accordingly, we conclude that the district court did not err in finding that Pettway's right to a speedy trial was not violated.

### B. Motion to Suppress

On appeal from the denial of a motion to suppress, we review the district court's "conclusions of law *de novo* and its factual findings for clear error, viewing the evidence in a light most favorable to the government." *United States v. Ramos*, 685 F.3d 120, 128 (2d Cir. 2012). A judge who determines whether there is probable cause to

issue a warrant "make[s] a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Because the Fourth Amendment exclusionary rule is intended to deter "intentional conduct that [is] patently unconstitutional," evidence seized by officers who carried out a warrant that issued without probable cause need not be excluded if those officers relied on the warrant in good faith. *Herring v. United States*, 555 U.S. 135, 143-44 (2009).

Here, the state judge who issued the warrant interviewed the cooperating witness *in camera*. Two federal judges reviewed the state judge's notes and also found probable cause for the issuance of the warrant. Hence, three judges independently found there was "a fair probability that contraband or evidence of a crime [would] be found" at 23 Roosevelt. *See Gates*, 462 U.S. at 238. But even assuming, *arguendo*, that the warrant issued without probable cause because it could have been more specific, Pettway has put forth no evidence or argument that the officers who executed the warrant acted in bad faith. *See Herring*, 555 U.S at 143-44. Accordingly, the district court properly denied Pettway's motion to suppress.

### C. *Jury Instructions*

"We review a claim of error in the district court's jury instructions *de novo*, disturbing the district court's judgment only if the appellant shows that the error was

-11-

prejudicial in light of the charge as a whole." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017). A jury charge is adequate if "taken as a whole, [it] is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). "A jury instruction is erroneous if it if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Sheng*, 848 F.3d at 86.

Defendants who use or carry a firearm "in furtherance of" a drug trafficking crime face certain mandatory minimum sentences. 18 U.S.C. § 924(c). "[T]he mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed in furtherance of the drug crime." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (internal quotation marks and emphasis omitted). Instead, there needs to be a "nexus" between the possession or use of the gun and the furtherance of the crime. *Id*. "Ultimately, the test is whether a reasonable jury could, on the evidence presented at trial, find beyond a reasonable doubt that possession of the firearm facilitated a drug trafficking crime" by "afford[ing] some advantage . . . relevant to the vicissitudes of drug trafficking." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005).

The district court's jury instruction accurately reflected the law, as it made clear that, to convict, the jury had to find that "the firearm helped forward, advance or promote the commission of the crime," and that the gun "played some part in furthering

-12-

the crime in order for this element to be satisfied." App'x at 2351. During the jury's deliberations, however, the jury asked for a definition of "in furtherance of." In response, the district court gave the jury an additional instruction that provided a non-exhaustive list of factors that the jury could consider in determining whether a gun was used in furtherance of drug trafficking. This list tracked language from *Snow*. *See* 462 F.3d at 62-63.

Pettway argues that this instruction was improper, based on our observation in *Lewter* that relying on a list of factors to understand whether a gun was used in furtherance of a crime "is of limited utility" because "each case has its own wrinkles." *Lewter*, 402 F.3d at 322. The statement in *Lewter*, however, was only dicta and it does not preclude a district court from listing factors that may be helpful to a jury. Additionally, the district court here made it clear that its list was not exhaustive. Accordingly, the district court did not err in its jury instructions.

### D. Leader Enhancement

We review a district court's application of an enhancement under the Guidelines *de novo* and factual determinations underlying a district court's Guidelines calculation for clear error. *United States v. Rowland*, 826 F.3d 100, 116 (2d Cir. 2016). Under U.S.S.G. § 3B1.1, the leader/organizer enhancement applies if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). Here, several witnesses testified that

Pettway was the leader of the Bailey Boys, an organization with more than five participants. Accordingly, the district court did not err when it applied the leader enhancement.

### E. § 924(c) Convictions

We review whether multiple § 924(c) counts should be treated as furthering the same conspiracy -- which is a question of law that requires us to determine whether a defendant committed separate crimes -- *de novo*. *United States v. Mejia*, 545 F.3d 179, 204 (2d Cir. 2008). To convict a defendant of multiple § 924(c) counts, the evidence that serves as the basis for each § 924(c) count must differ. *United States v. Arline*, 835 F.3d 277, 279, 282-283 (2d Cir. 2016). "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the offense – in the legal sense, as defined by Congress – complained of in one count is the same as that charged in another." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999) (internal quotation marks omitted).

Pettway argues that the government separated the same § 924(c) offense into two separate offenses to use the "harsh sentencing provision[] . . . to force a plea." Appellant's Br. at 73. He contends that Counts 2 and 4 of the fourth superseding indictment cover the same conduct -- a two-year narcotics conspiracy that spanned from 2010 to 2012 -- and that therefore Count 4 should be vacated. Although the two counts Pettway complains of are similar, they are sufficiently different to allow the

government to have charged two separate crimes. Importantly, they involve two distinct drug charges -- one for cocaine base and the other for heroin and cocaine. *See Mejia*, 545 F.3d at 183-84, 205-06 (defendants properly charged with two § 924(c) counts based on shootings of two victims in one location and a shooting of a third victim 40 minutes later at a separate location). Accordingly, we are not persuaded.

\* \* \*

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for further proceedings. While we affirm the convictions as to all counts except Count 5, we **VACATE** the sentences on all counts. As Count 5 remains unresolved, the district court shall conduct a *de novo* resentencing after resolving the open issues.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk