15-277-cv(L)
Stevens v. Rite Aid Corporation

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2016

Argued: October 6, 2016          Decided: March 21, 2017

Docket Nos. 15-277(L), 15-279(Con), 15-3491(xap)

- - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER STEVENS,
            Plaintiff-Appellee-Cross-Appellant,

                  v.

RITE AID CORPORATION, DBA Rite Aid Pharmacy,
AKA Eckerd Corporation, DBA Rite Aid,
            Defendant-Appellant-Cross-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, LYNCH, and DRONEY, Circuit Judges.

Appeal from the January 27, 2015, judgment and appeal and cross-appeal from the September 23, 2015, post-trial order of the District Court for the Northern District of New York (Thomas J. McAvoy, District Judge) in a case brought under the Americans with Disabilities Act and similar state law. The judgment, entered after a jury

trial, awarded substantial damages to the plaintiff on his claims of wrongful termination, retaliation, and failure to accommodate. The post-trial order dismissed the plaintiff's failure-to-accommodate claim, granted a new trial unless plaintiff agreed to a remittitur (later accepted), substantially granted plaintiff's claims for interest, and denied defendant's motion for judgment as a matter of law on plaintiff's wrongful discharge and retaliation claims.

On the appeal, we reverse the District Court's post-trial denial of Rite Aid's motion for judgment as a matter of law on Stevens' federal and state law wrongful termination and retaliation claims; on the cross-appeal, we affirm the District Court's dismissal of Stevens' failure-to-accommodate claim. We remand for entry of a revised judgment in favor of Rite Aid.

Allyson N. Ho, Morgan, Lewis & Bockius LLP, Dallas, TX (John C. Sullivan, Morgan, Lewis & Bockius LLP, Dallas, TX, Michelle Seldin Silverman, Morgan, Lewis & Bockius, Princeton, NJ, on the brief), for Appellant-Cross-Appellee Rite Aid Corporation.

2

Janet D. Callahan, Hancock Estabrook, LLP, Syracuse, NY (Daniel B. Berman, Robert C. Whitaker, Robert J. Thorpe, Hancock Estabrook, LLP, Syracuse, NY, on the brief), for Appellee-Cross-Appellant Christopher Stevens.

JON O. NEWMAN, <u>Circuit Judge</u>:

This appeal and cross-appeal concern a pharmacist who suffers from trypanophobia – fear of needles. The pharmacy where he was employed discharged him because he could not comply with a company policy that required pharmacists to administer immunization injections to customers. That action precipitated a suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and similar state law. Rite Aid Corporation ("Rite Aid"), the employer, appeals from the January 27, 2015, judgment entered by the District Court for the Northern District of New York (Thomas J. McAvoy, District Judge) awarding Christopher Stevens, the pharmacist, substantial damages after a jury trial. Rite Aid also appeals and Stevens cross-appeals from the District Court's September 23, 2015, post-trial order. That order dismissed the plaintiff's

3

failure-to-accommodate claim, granted a new trial unless plaintiff agreed to a remittitur (later accepted), substantially granted plaintiff's claims for interest, and denied defendant's motion for judgment as a matter of law on plaintiff's wrongful discharge and retaliation claims.

Background

In 2011, Rite Aid, and other large pharmacy chains, started requiring pharmacists to perform immunizations in order to fill an unmet need for vaccinations in the healthcare market. In April 2011, Rite Aid revised its job description to require pharmacists to hold a valid immunization certificate [1] and included a reference to immunizations in the list of "essential duties and responsibilities" for pharmacists.

Before his termination in August 2011, Stevens worked in upstate New York as a full-time pharmacist for Rite Aid and its predecessor pharmacies for 34 years. He was responsible for handling medications and counseling customers regarding their medications. In March 2011,

---

[1] According to testimony at trial, a person must be licensed by New York to practice as a pharmacist. However, a pharmacist need not obtain an immunization certificate to be licensed in New York. Rather, immunization certification is a separate, optional process for New York pharmacists.

Stevens received an e-mail from his district manager, William Spink, informing him that Rite Aid was going to require all pharmacists to give immunization injections to customers.

Stevens obtained a note from his treating physician, Dr. Mark Warfel, stating that Stevens is "needle phobic and cannot administer immunization by injection." Stevens wrote a letter to Spink explaining that his trypanophobia causes him to experience "lightheadedness, paleness, and a feeling that I may faint" and that, as a result he "would never even consider trying to become an immunizing pharmacist." Stevens also stated that he believed his condition was a covered disability under the ADA, and requested that Rite Aid provide him with a reasonable accommodation.

In May, William Farley, a Rite Aid Human Resources manager, faxed Stevens a list of questions for his doctor to answer regarding Stevens' needle phobia, including how the phobia would manifest itself if Stevens were to administer immunizations by injection and whether there were any accommodations that would enable Stevens to perform injections. Dr. Warfel's response stated that if Stevens were to administer an injection, "[h]e would become diaphoretic, hypotensive and probably faint. Vagal

5

response."[2] Dr. Warfel further advised that Stevens could not safely administer an injection, since the likelihood that he would faint would be "unsafe for the patient and Mr. Stevens."

In August, Rite Aid officials told Stevens that the ADA did not apply to trypanophobia, that Rite Aid was not required to accommodate Stevens, and that Stevens would lose his job unless he successfully completed immunization training. Stevens later told Spink that he would not be able to complete the training. On August 23, a Rite Aid official gave Stevens a termination letter, informing him that he was being terminated for refusing to perform customer immunizations, which were an essential function of his job.

At trial, Dr. Warfel testified that Stevens suffers from trypanophobia and that, when faced with needles, his heart rate increases and he becomes lightheaded, dizzy, and anxious. Frank Dattilio, a Board Certified Clinical and Forensic Psychologist, testified that Stevens' condition causes his sympathetic nervous system to react when faced with a needle, resulting in heightened blood pressure, syncope (fainting), heightened

---

[2] At trial, Dr. Warfel and Stevens explained that "diaphoretic" refers to sweating, "hypotensive" refers to a drop in blood pressure that can cause lightheadedness or fainting, and "vagal response" refers to fainting.

6

feelings of anxiety, and loss of concentration that can linger after exposure to needles.

Richard Mohall, Rite Aid's Senior Director of Clinical Service, testified that Rite Aid wanted its customers to have "the ability to come into Rite Aid any time the pharmacy was open, any day[,] any time[,] and receive an immunization." Traci Burch, Rite Aid's Vice-President of Labor Relations and Employment Counsel, testified that Rite Aid had decided that "immunizing was going to be a requirement for all of our pharmacists across the country, so anyone who couldn't perform that essential job function wouldn't be able to be a pharmacist."

Following trial, the jury awarded Stevens back-pay damages of $485,633.00, front-pay damages of $1,227,188.00 to cover a period of 4.75 years, and non-pecuniary damages of $900,000, later reduced to $125,000 when Stevens agreed to a remittitur. Judgment was entered on January 27, 2015.

On September 23, 2015, the District Court entered an order denying Rite Aid's post-trial motion for judgment as a matter of law on Stevens' wrongful termination and retaliation claims, ordering a remittitur, which Stevens

7

accepted, and dismissing Stevens' failure-to-accommodate claim.[3]

Rite Aid appeals from the judgment[4] and the post-judgment order, and Stevens cross-appeals from the post-judgment order.

## Discussion

We review *de novo* a district court's grant or denial of judgment as a matter of law under Rule 50. *See Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010) (denial); *Norville v. Staten Island University Hospital*, 196 F.3d 89, 94 (2d Cir. 1999) (grant). In doing so, we apply the same well established standard as the district court: "Judgment as a matter of law may not properly be

---

[3] Stevens' motion also concerned calculation of interest, a matter rendered moot by our disposition of this appeal.

[4] Rite Aid's initial notice of appeal in No. 15-277 states that it is appealing from the District Court's December 30, 2014, order denying its motion to dismiss Stevens' complaint. That appeal is improper because it purports to appeal from an unappealable pretrial order and unnecessary because Rite Aid's notice of appeal in No. 15-279 states that it is appealing from the District Court's September 23, 2015, judgment, and that appeal brings up for review all prior orders of the District Court that produced the judgment, *see Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 178 (2d Cir. 2000). Rite Aid's amended notice of appeal in 15-277 states that it is appealing from the District Court's September 23, 2015, post-judgment order.

granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in h[is] favor." *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).

The ADA prohibits discrimination in employment against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is defined as one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, employers may not discriminate against people with disabilities that do not prevent job performance, but when a disability renders a person unable to perform the essential functions of the job, that disability renders him or her unqualified. Accordingly, one of the elements of a claim under the ADA is that an employee was "qualified to perform the essential functions of his job, with or without reasonable accommodation." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citation and internal quotation marks omitted).

*Essential function*. In evaluating whether a particular job function is "essential," this Court considers "the employer's judgment, written job descriptions, the amount of time spent on

9

the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)); *see also* 29 C.F.R. § 1630.2(n)(3). Courts "must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," *Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir. 2003) (citation and internal quotation marks omitted), but "no one listed factor will be dispositive." *Stone*, 118 F.3d at 97. Courts must conduct "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan*, 711 F.3d at 126.

In this case, the evidence, required to be viewed in the light most favorable to Stevens, compels a finding that immunization injections were an essential job requirement for Rite Aid pharmacists at the time of Stevens' termination. Rite Aid personnel testified, without contradiction, that the company made a business decision to start requiring pharmacists to perform immunizations in

10

2011. The evidence established that the company carried out this policy by revising its job description for pharmacists to require immunization certification and licensure, as necessary depending on the state where the pharmacy is located, and including immunizations in the list of "essential duties and responsibilities" for Rite Aid pharmacists. Rite Aid's in-house counsel testified that Rite Aid terminated another pharmacist with needle phobia because, like Stevens, he failed to undergo Rite Aid's immunization training program, further demonstrating that the company deemed administering immunizations to be an essential function of its pharmacists.

None of Stevens' arguments undermines the conclusion that immunization injections were an essential function of his job. He points out that Rite Aid's revised job description did not specifically state that pharmacists were required to administer immunizations *by injection*, but there was no evidence that immunizations were administered by alternative means. Although Rite Aid pharmacists spent relatively little time performing customer immunizations when the new policy was first put in

place in 2011, there was no evidence that the policy was not fully implemented thereafter.[5]

It is understandable that the jury had sympathy for Stevens, afflicted as he was with an unusual phobia. Nevertheless, his inability to perform an essential function of his job as a pharmacist is the only reasonable conclusion that could be drawn from the evidence.

*Reasonable accommodation*. We next consider whether there was a reasonable accommodation that would have enabled Stevens to perform the essential job function of administering immunization injections. It is important to bear in mind that the issue is whether a reasonable accommodation would have enabled him to perform that essential function, not whether, as some of Stevens' arguments appear to suggest, he could perform

---

[5] Stevens argues that William Spink, a Rite Aid regional manager, did not testify that immunizations were an essential function of the pharmacist's job. Spink, however, was describing the duties of a pharmacist in 2010, "about a year before the immunization program" began. His testimony cannot be construed as applying to the duties of a pharmacist when Stevens was terminated in 2011.

Furthermore, Mohall, Rite Aid's Senior Director of Clinical Service, testified that the low immunization numbers in 2011 – when Stevens was terminated – were a product of the policy's first year and the fact that the company was "just starting to make the public aware that [it] w[as] available [for immunizations]." He also testified that the immunization numbers "have grown tremendously and substantially" since 2011, in the realm of 100 to 200 percent each year.

his other duties as a pharmacist. "A reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon*, 332 F.3d at 100.

A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

Granting Rite Aid's post-trial motion to dismiss Stevens' failure-to-accommodate claim, the District Court correctly concluded that Stevens "failed to prove that a reasonable accommodation existed at the time he was terminated, or that he would have accepted an identified accommodation if offered." At trial, Stevens claimed there were four accommodations that Rite Aid could have offered him. None validly supported his claim.

First, Stevens suggested that Rite Aid could have offered him desensitization therapy, but he points to no authority in support of the theory that employers are obligated to offer employees medical treatment as a reasonable accommodation under the ADA. Indeed, that theory has been rejected by district courts in this Circuit. *See, e.g.*, *Emerllahu v. Pactiv, LLC*, No.

13

11-CV-6197(MAT), 2013 WL 5876998, at *4 n.2 (W.D.N.Y. Oct. 30, 2013); *Desmond v. Yale-New Haven Hospital, Inc.*, 738 F. Supp. 2d 331, 351 (D. Conn. 2010). Furthermore, Stevens failed to show that he would have undergone desensitization therapy had it been made available to him.

Stevens also suggested that he could have been transferred to a pharmacy technician position.[6] However, Rite Aid's Vice-President of Labor Relations and Employment testified without contradiction that Rite Aid offered Stevens another position, such as a pharmacy technician position, that would not require administering immunizations, and Stevens offered no evidence that he requested, considered, or was open to a position as a pharmacy technician.

Stevens' suggestions that Rite Aid could have either hired a nurse to give immunization injections for him or assigned him to a dual-pharmacist location do not propose true accommodations. Those steps would be exemptions that would have involved other employees performing Stevens' essential immunization duties. Rite Aid was not required to grant Stevens these exemptions. *See Shannon*, 332 F.3d at 100 (reasonable

---

[6] According to testimony at trial, a pharmacy technician is a type of assistant to a licensed pharmacist. Pharmacy technicians earn substantially less money than licensed pharmacists and cannot administer immunizations.

14

accommodation does not require elimination of an essential function). Moreover, as the District Court noted, Stevens failed to show that a vacant position at a dual-pharmacist store existed at the time of his termination.

Where the employee's disability is known to the employer, "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (citation omitted). "Nevertheless, an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal." *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012) (citation omitted). Because Stevens failed to present any evidence suggesting the existence of a reasonable accommodation at the time of his termination, he cannot recover based on Rite Aid's failure to engage in an interactive process, even if such a failure occurred.

## Conclusion

Because performing immunization injections was an essential job requirement and Stevens presented no evidence of a reasonable accommodation that would have allowed him to perform immunizations at the time of his dismissal, no juror could

15

reasonably conclude that Stevens was "qualified to perform the essential functions of his job, with or without reasonable accommodation."

On the appeal, we reverse the District Court's post-trial denial of Rite Aid's motion for judgment as a matter of law on Stevens' federal and state law wrongful termination and retaliation claims;[7] on the cross-appeal, we affirm the District Court's dismissal of Stevens' failure-to-accommodate claim. We remand for entry of a revised judgment in favor of Rite Aid.

---

[7] Stevens' retaliation claim necessarily fails because Stevens' inability to perform an essential function of his job was a legitimate, non-retaliatory reason for his discharge.

Our reversal of the District Court's denial of Rite Aid's post-trial motion for judgment as a matter of law renders moot Rite Aid's appeal from the judgment.

16