20-4040-cv
*Brian J. Clark v. Coca-Cola Beverages Northeast, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

   At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of January, two thousand twenty-two.

PRESENT:
    ROBERT D. SACK,
    GERARD E. LYNCH,
    JOSEPH F. BIANCO,
      *Circuit Judges.*

---

Brian J. Clark,

    *Plaintiff-Appellant*,

    v.              20-4040-cv

Coca-Cola Beverages Northeast, Inc.,
FKA CocaCola Bottling Company of
Northern New England, Inc.,

    *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:    CARLO A. C. DE OLIVEIRA, Cooper Erving
               & Savage LLP, Albany, NY.

FOR DEFENDANT-APPELLEE: PETER BENNETT, The Bennett Law Firm, P.A., Portland, ME.

Appeal from an order and judgment of the United States District Court for the Northern District of New York (Mordue, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-Appellant Brian J. Clark, a former employee of Defendant-Appellee Coca-Cola Beverages Northeast, Inc. ("Coca-Cola"), appeals from the November 20, 2020 order and judgment by the United States District Court for the Northern District of New York, denying Clark's motion for summary judgment and granting Coca-Cola's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

Clark brought various claims against Coca-Cola under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that Coca-Cola discriminated against Clark due to his disability, failed to provide him with reasonable accommodations, and terminated him in retaliation for requesting reasonable accommodations for his disability. On appeal, Clark challenges the district court's grant of summary judgment, arguing that the district court incorrectly concluded that: (1) Clark was not qualified to perform the essential functions of his position, with or without accommodation; (2) Coca-Cola did not have a "100% healed policy" in violation of the ADA; (3) Coca-Cola did not have any available positions, regardless of Clark's need for accommodation; and (4) Clark's request for accommodation was not the but-for cause of his termination.

2

Clark was employed by Coca-Cola's predecessor, Coca-Cola Refreshments USA, Inc. ("CCR"), as a general warehouse laborer at the Albany Sales Center from March 2009 through September 2017, in a bargaining unit represented by Teamsters Union Local 294. In September 2017, Coca-Cola purchased the Albany Sales Center from CCR and agreed to honor the existing collective bargaining agreement ("CBA") that CCR had previously negotiated with the Teamsters Union.

In 2012, Clark alleges that he sustained a work-related back injury and returned to work with restrictions after a limited period of medical leave until he re-injured his back in January 2016 and again went out on medical leave. Under the seniority clause of the CBA, Clark's seniority and employment were protected while he was out on medical leave for up to two years. On November 22, 2017, a physician assistant cleared Clark to return to work with light-duty restrictions beginning December 6, 2017. Later that week, Clark spoke to Coca-Cola about returning to work with restrictions and was informed that Coca-Cola had no light-duty positions available at the time. On December 18, 2017, Clark filed a grievance—the arbitration mechanism under the CBA—alleging that Coca-Cola had discriminated against him due to his disability. Coca-Cola found no evidence of discrimination and accordingly denied his grievance.

Pursuant to the CBA, Clark's seniority and work protections expired in January 2018, two years after he went out on medical leave, and Coca-Cola officially terminated Clark as of February 1, 2018. We assume the parties' familiarity with the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

I.  **Standard of Review**

"We review a district court's grant or denial of summary judgment *de novo*, viewing the

3

evidence in the light most favorable to the non-moving party." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 34 (2d Cir. 2005). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although a court ruling on a summary judgment motion must "construe the evidence in the light most favorable to the [non-moving party], drawing all reasonable inferences and resolving all ambiguities in their favor," *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017), the non-moving party still "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, mere "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact" and "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc*., 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks omitted).

## II.    ADA Discrimination Claim

Clark argues that the district court incorrectly concluded he could not establish a discrimination claim under the ADA, asserting, *inter alia*, that the district court ignored evidence that Coca-Cola maintained a "100% healed policy" and refused to provide Clark with reasonable accommodations. As set forth below, we agree with the district court that Clark's claim cannot survive summary judgment.

We analyze Clark's ADA discrimination claim according to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015). Under this framework, "[a] plaintiff must establish a

4

prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

To establish a prima facie case of ADA discrimination, "a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). As the district court noted, only the last two elements are in dispute here.

It is uncontroverted that the general warehouse position, which Clark sought to fill upon his return to work, required the ability to "repetitively lift, push and pull 50+ pounds, reach above head height, squat, kneel, bend and reach," as well as "to push and pull manual and powered material handling equipment . . . a minimum of 100 yards without assistance." Joint App'x at 523. Coca-Cola submitted evidence establishing that, although employees may be assigned each shift to perform specialized assignments such as truck jockey, these roles are merely subsets of the general warehouse position and thus have the same essential functions. Clark pointed to no evidence contradicting that factual contention. Further, it is undisputed that Clark was 100 percent disabled until at least December 6, 2017, was limited to jobs involving "[n]o pushing pulling, [or] lifting greater than 20 [pounds] occasionally" from that date until January 15, 2018, Joint App'x at 215, and from then on, was restricted to "[n]o lifting greater than 50 [pounds]," Joint App'x at 216. Thus, the evidence demonstrates that Clark was unable to perform the

5

essential functions of the general warehouse position before his employment expired under the CBA, and no rational jury could find otherwise.

Moreover, regardless of Clark's ability to perform these essential functions, the uncontroverted evidence further establishes that Coca-Cola had no available positions in the relevant time period. *Cf. Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 564 (2d Cir. 2000) ("[A] plaintiff alleging a violation of the ADA . . . by virtue of an employer's failure to reasonably accommodate the employee by reassigning him to a suitable vacant position bears the burden of proving that such a vacancy existed."). Although Clark contends that there were available positions, the vague evidence proffered by Clark is insufficient to raise a material issue of fact as to whether a vacancy actually existed during the relevant time period—namely, between December 6, 2017, when Clark was able to return to work with restrictions, and February 1, 2018, when he was terminated after the expiration of his two years of medical leave under the CBA— and that he was qualified for the position.[1] To the extent Clark similarly asserts that Coca-Cola should have accommodated him by either assigning him to a light-duty position—which was not available—or by reallocating physical tasks from him to other team members, the ADA does not require an employer to create a new position or to eliminate an essential function of a job, as these are not considered *reasonable* accommodations. *See, e.g.*, *Graves v. Finch Pruyn & Co., Inc.*,

---

[1] For example, Clark points to a Coca-Cola job advertisement from November 10, 2017, indicating that the company was seeking to hire inventory checkers. However, even if an inventory checker position was open in November 2017, which Coca-Cola disputes, it is uncontroverted that Clark was on total disability until at least December 6, 2017. Additionally, the checker position had the same physical job functions listed as the general warehouse position, and thus, Clark would have similarly been unqualified to work the position given his restrictions. Further, the inventory checker position, unlike the warehouse position, was a non-union role. Accordingly, in order to obtain that role, Clark would have had to quit the union, apply for the checker position directly, and be hired for it.

457 F.3d 181, 187 (2d Cir. 2006); *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).

We also find unpersuasive Clark's argument that the district court erred in concluding that the weight-lifting and other physical requirements of the general warehouse job and its relative subfunctions were "essential functions," rather than merely job requirements. Appellant's Br. at 24. Clark's contention primarily relies on Coca-Cola's job description, which lists the physical attributes under "job requirements," rather than "essential duties & responsibilities." Joint App'x at 523. However, an employer's written job description is only one of the many factors we consider when evaluating whether a job function is essential and "no one . . . factor will be dispositive." *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997). Instead, we "must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," examining factors such as "the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (internal quotation marks omitted).

In addition to the written job descriptions, testimony from Coca-Cola employees demonstrated that the warehouse positions demanded primarily physical labor, requiring employees to perform repetitive tasks such as hooking and unhooking tractors, and building, wrapping, and loading pallets with heavy packages up to and exceeding 50 pounds. Moreover, of the 217 products in Coca-Cola's warehouse, over 70% of them weighed more than 20 pounds, and at least five products weighed over 50 pounds. Thus, particularly when giving, as we must,

7

"considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," *D'Amico v. City of New York,* 132 F.3d 145, 151 (2d Cir. 1998), Clark has not pointed to evidence in the record that would preclude summary judgment on this issue and allow a jury to rationally find that the physical requirements listed in the general warehouse job description are not essential functions of the role.

Finally, Clark argues that *McDonnell Douglas*' burden-shifting framework is inapplicable here, as he alleges that Coca-Cola has a "100% healed policy" requiring employees to return to work disability free, thus constituting direct evidence of discrimination. We disagree. In addition to the provided documentation detailing Coca-Cola's official return to work policies, as well as testimony from multiple Coca-Cola employees refuting Clark's allegation, it is also uncontroverted that Coca-Cola had multiple employees return to work with disabilities requiring reasonable accommodations.[2] On this record, no rational jury could conclude there was a "100% healed policy." Further, even if Clark had established that Coca-Cola had such a policy, the uncontroverted fact remains that Coca-Cola had no available positions to reasonably accommodate Clark. *Cf. Jackan*, 205 F.3d at 564.

Moreover, even if Clark could establish a prima facie case of discrimination, he did not provide sufficient evidence from which a jury could concluded that his disability was the but-for cause of his termination. *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019)

---

[2] The evidence Clark proffers to the contrary—out-of-context statements and testimony by ex-employees that were not decision-makers at Coca-Cola—is speculative and does not suffice to create a genuine issue of material fact. *See Niagara Mohawk Power Corp.*, 315 F.3d at 176 ("Speculation by a witness as to possibilities that the witness is not in a position absolutely to foreclose is not an admission that creates a genuine dispute of fact concerning an otherwise unequivocal denial.").

("[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."). Coca-Cola demonstrated a legitimate, non-discriminatory reason for terminating Clark's employment—namely, that Clark could not return to his warehouse position for the reasons described above, and that his two-year term of medical leave had expired under the CBA—and Clark provided insufficient evidence from which a rational jury could find these proffered reasons were pretextual.

Thus, because Clark cannot establish that he was qualified to perform the essential functions of an available job, with or without accommodation, and because he cannot establish that Coca-Cola terminated him because of his disability, Clark's discrimination claim fails as a matter of law. Accordingly, we conclude that the district court correctly granted Coca-Cola's motion for summary judgment on this claim.

### III. ADA Reasonable Accommodation Claim

Clark also argues that the district court incorrectly granted Coca-Cola summary judgment on his reasonable accommodation claim.

To establish a *prima facie* case of ADA discrimination based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that: "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017) (internal alteration and quotation marks omitted). Additionally, the plaintiff must show "the *connections* between (1) the failure to accommodate a

9

disability, (2) the performance deficiencies, and (3) the adverse employment action." *Natofsky*, 921 F.3d at 352.

Clark's failure to accommodate claim fails for the same reasons discussed above—namely, the uncontroverted evidence that Coca-Cola had no available positions and was not required to create a new position or reassign the essential functions of the warehouse role to accommodate Clark's disability. *See Graves*, 457 F.3d at 187 ("The ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation, but the ADA does not require creating a new position for a disabled employee.") (internal citation omitted); *Shannon*, 332 F.3d at 100 ("A reasonable accommodation can never involve the elimination of an essential function of a job."). In short, Clark has failed to point to any reasonable measures that Coca-Cola could have taken to accommodate Clark's needs. And although Clark claims that Coca-Cola failed to engage in an interactive process with him, a claim that is disputed by Coca-Cola, "there is no valid independent claim under the ADA for failure to engage in an interactive process," *Sheng*, 848 F.3d at 87, and "an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal," *Stevens*, 851 F.3d at 231. As Clark has failed to provide sufficient evidence that would permit a rational jury to conclude that he could perform the essential functions of an available position with reasonable accommodation, he cannot establish a failure to accommodate claim. Accordingly, we conclude that the district court properly granted summary judgment to Coca-Cola.

## IV. ADA Retaliation Claim

Finally, Clark argues that the district court incorrectly granted summary judgment on his ADA retaliation claim. We disagree.

To establish a retaliation claim under the ADA, an employee "must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72–73 (2d Cir. 2019). A causal connection can be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015).

Here, although there is no dispute that the first two elements of a retaliation claim are met, Clark did not provide "sufficient evidence of a causal nexus between [his] protected activity and the alleged adverse employment actions he suffered." *Fox*, 918 F.3d at 73. Aside from the temporal proximity between his request for accommodations and his termination, which "alone is insufficient to defeat summary judgment at the pretext stage," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013), Clark has provided no other circumstantial or direct evidence to support his retaliation claim, or to counter Coca-Cola's legitimate, non-discriminatory reason for his termination. Thus, for substantially the same reasons discussed in connection with Clark's discrimination and failure to accommodate claims, we agree with the district court's determination that summary judgment was warranted on the retaliation claim.

\*　　　　　　\*　　　　　　\*

11

We have considered all of Clark's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the order and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court