23-7961-cv
*Whitney v. Montefiore Med. Ctr.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of July, two thousand twenty-five.

PRESENT:     Reena Raggi,
             Steven J. Menashi,
             Myrna Pérez,
                    *Circuit Judges.*

_____

Ryan Whitney, M.D.,

           *Plaintiff-Appellant*,

        v.                                              No. 23-7961-cv

Montefiore Medical Center, Albert Einstein College of Medicine,

           *Defendants-Appellees.*

_____

*For Plaintiff-Appellant*:  HYLAND HUNT, Deutsch Hunt PLLC, Washington, DC (Ruthanne M. Deutsch, Alexandra Mansbach, Deutsch Hunt PLLC, Washington, DC, Jason L. Solotaroff, Giskan Solotaroff & Anderson LLP, New York, NY, *on the brief*).

*For Defendants-Appellees*:  EMILY C. HAIGH (Jean L. Schmidt, *on the brief*), Littler Mendelson P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, J.) entered on November 8, 2023.

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

In April 2021, Montefiore Medical Center terminated Dr. Ryan Whitney from his anesthesiology residency. Whitney, who has attention-deficit hyperactivity disorder ("ADHD"), brought claims against Montefiore alleging disparate treatment, retaliation, and failure to accommodate under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* The district court granted summary judgment to Montefiore on Whitney's federal claims and declined to exercise supplemental jurisdiction over his state-law claims. *See Whitney v. Montefiore Med. Ctr.*, No. 21-CV-9623, 2023 WL 7386400, at *1 (S.D.N.Y. Nov. 8, 2023).

On appeal, Whitney argues that the district court erred by granting summary judgment to Montefiore on his federal claims. We review the grant of summary judgment de novo and, in doing so, "must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*,

580 F.3d 73, 79-80 (2d Cir. 2009)). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

**I**

Whitney argues that the district court erred by concluding that he failed to adduce sufficient evidence to withstand summary judgment on his claim that Montefiore violated the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12112(a) (ADA prohibiting an employer from discriminating "against a qualified individual on the basis of disability"); 29 U.S.C. § 794(a) (Rehabilitation Act prohibiting "any program or activity receiving Federal financial assistance" from discriminating against an individual "solely by reason of her or his disability"). We affirm the judgment because there is no genuine dispute of material fact that Whitney was unqualified for his position even with a reasonable accommodation. *See* 42 U.S.C. § 12111(8) (defining a "qualified individual" for purposes of the ADA as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

Montefiore suspended its initial decision to terminate Whitney to "provide him with an opportunity to demonstrate that he c[ould] perform the essential functions of his job with … accommodations." App'x 969. There is no genuine dispute that Montefiore provided Whitney with reasonable accommodations during that time. *See infra* Part III. Whitney failed two of his three rotations during the accommodation period, and Montefiore decided, in light of "principles of patient safety," to terminate Whitney's residency. App'x 934. Montefiore identified five "areas of concern" in its April 2021 termination letter: (1) *patient care*, based on Whitney's failure "to function safely and independently in all level of cases" but especially "in cases where unexpected events occur"; (2) *medical knowledge*, based on Whitney failing the board examination three times; (3) *technical skills*, based on Whitney becoming "extremely anxious during procedures, particularly if things d[id] not go exactly according to plan," "fail[ing]

3

to perform the steps of the procedure successfully," and being "unable to react appropriately during critical events in the case leading to near misses"; (4) *interpersonal and communication skills*, based on Whitney "fail[ing] to effectively and accurately communicate during critical times in [a] case" and not seeking help from his mentors; and (5) *professionalism*, based on Whitney "demonstrat[ing] no insight into [his] behavior," blaming others for his performance, and violating Montefiore's moonlighting policy. *Id.* at 934-35.

The letter described a cleft palate surgery in which Whitney participated during the accommodation period. An infant's breathing tube became dislodged during the surgery and required re-intubation. A doctor involved in the procedure reported that Whitney "fail[ed] to react in an expeditious manner" and expressed concern about Whitney's performance. *Id.* at 990. Whitney "had to be prompted by the surgeon to perform one of the primary functions of an anesthesiologist, i.e., providing the patient with oxygen flow." *Id.* at 934.

Whitney also exhibited "a lack of honesty, integrity[,] and ethical behavior" during his time at Montefiore. *Id.* at 832; *see also id.* at 1089 (January 2021 report to the American Board of Anesthesiology listing "honesty, integrity, reliability, and responsibility" as "[e]ssential [a]ttributes" and reporting a grade of "[u]nsatisfactory" for Whitney). For example, Montefiore adduced evidence that Whitney had punctured a pregnant patient's dura and then altered the patient's medical records without authorization to conceal his error. Additionally, he admitted to violating the anesthesiology department's moonlighting policy by practicing medicine outside of the program. Whitney does not argue that these behaviors were attributable to his disability.[1] Nor did he adduce evidence that the

---

[1] Some of the performance issues Montefiore identified could have been caused by Whitney's disability. "[E]mployers may not discriminate against people with disabilities that do not prevent job performance, but when a disability renders a person unable to perform the essential functions of the job, that disability renders him or her unqualified." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017). While "firing an employee because of performance-related deficiencies" may result in liability for an employer when

behaviors resulted from something other than his dishonesty. Because such dishonesty would render him unqualified to treat patients as an anesthesiology resident, Whitney has not identified a genuine factual dispute as to whether he is a "qualified individual" under the ADA or the Rehabilitation Act. 42 U.S.C. § 12111(8); 29 U.S.C. § 794(a).

Record evidence supported each reason on which Montefiore relied in the April 2021 termination letter. Indeed, a panel of five doctors who were unaffiliated with Montefiore's Anesthesiology Department unanimously determined that Whitney's termination was "based on a sound factual basis and sufficiently supported by a preponderance of the evidence." App'x 1008-09. Whitney has not adduced evidence to call into question Montefiore's assessment of his performance or to establish that he could perform the essential functions of an anesthesiology resident.

## II

The ADA and the Rehabilitation Act make it unlawful to discriminate against an employee because that employee "opposed any act or practice made unlawful by [the Acts] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" those Acts. 42 U.S.C. § 12203(a); *see also* 29 U.S.C. § 794(d). In the absence of direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To establish a *prima facie* case, Whitney needed to establish that (1) he engaged in protected activity; (2) Montefiore knew that he engaged in protected activity; (3) an adverse

---

the performance deficiencies "were themselves caused by failure to provide a reasonable accommodation," *Parker v. Sony Pictures Ent.*, 260 F.3d 100, 107 (2d Cir. 2001), that principle does not apply here. Montefiore suspended its initial termination decision to provide Whitney with an opportunity to demonstrate that he could perform the essential functions of his position with accommodations. It terminated him only after the deficiencies persisted during the accommodation period.

decision or course of action was taken against him; and (4) a causal connection existed between his activity and the adverse action. *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002).

Whitney alleges that he engaged in protected activity in October 2020 by requesting accommodations from Montefiore and by filing a complaint with the U.S. Equal Employment Opportunity Commission. The parties agree that if Whitney's disparate treatment claim fails, then his retaliation claim also fails.

We agree that Whitney's retaliation claim fails. Physicians had expressed concerns about Whitney's performance issues as early as October 2018, long before he engaged in protected activity, and continued to do so until his termination in April 2021. In fact, Whitney engaged in the protected activity only after Montefiore notified him of its initial termination decision in September 2020. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Moreover, we agree with the district court that Montefiore's decision to suspend Whitney's termination and to give him a chance to perform with accommodations is "inconsistent with a theory of retaliation." *Whitney*, 2023 WL 7386400, at *23; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

The record does not permit an inference that Montefiore's reasons for terminating Whitney were pretextual. The district court correctly granted summary judgment to Montefiore on Whitney's retaliation claim.

### III

Whitney additionally alleges that Montefiore discriminated against him on the basis of his ADHD by failing to grant him reasonable accommodations. The

ADA and the Rehabilitation Act require a covered employer to make reasonable accommodations for an employee's disability "unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'" *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also* 29 U.S.C. § 794(d).

To establish a failure-to-accommodate claim, a plaintiff must show that (1) he "is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (alterations omitted) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). The accommodation "should be 'effective,'; but it need not be perfect." *Porter*, 92 F.4th at 155 (ADA); *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995) (Rehabilitation Act). "[I]n a case such as this, in which the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" *Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)).

We agree with the district court that Whitney's claim fails because Montefiore provided him with reasonable accommodations. Montefiore agreed to provide Whitney with nine of his ten requested accommodations either in full or in part. The accommodations included assigning Whitney a mentor in the Anesthesiology Department and in each rotation, instructing attending physicians who worked with Whitney to provide feedback in specific areas, creating a daily feedback form for attending physicians to use to evaluate Whitney, allowing Whitney to use a checklist in the operating room, providing him with copies of non-confidential email feedback received by Ramachandran, and providing him a thirty-minute lunch break and two fifteen-minute breaks.

7

These accommodations sought to help Whitney improve in areas in which he had previously struggled, such as by improving his organization and decreasing his anxiety. And Montefiore granted these accommodations even though it had already decided to terminate Whitney and had no obligation to continue his employment. *See McElwee v. County of Orange*, 700 F.3d 635, 641 n.4 (2d Cir. 2012) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.") (internal quotation marks omitted); *see also Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 66 (1st Cir. 2020) ("Nothing in the ADA demands that an employer accord an employee—even an employee with a disability—such a second chance.").

Whitney argues that the district court should have considered "how Montefiore's accommodations compare[d] to what Montefiore *agreed* to provide" rather than whether the accommodations as implemented were reasonable. Appellant's Br. 53. But none of the cases Whitney cites stands for that proposition. *See, e.g.*, *Porter*, 92 F.4th at 155 (considering whether the manner in which the employer implemented the accommodations "ma[d]e the accommodations ineffective"). Regardless, the district court considered whether Montefiore deviated from the promised accommodations and concluded that it did not. *Whitney*, 2023 WL 7386400, at *25. ("[E]ven if Montefiore's keeping its promises were the measure of liability for a failure to accommodate, Whitney has not adduced evidence on which a jury could find that it breached these promises.").

Whitney argues that a jury could infer that Montefiore failed to provide reasonable accommodations based on the way it implemented four of the accommodations. He claims that Montefiore did not (1) distribute certain information about his ADHD to the attending physicians who worked with Whitney; (2) provide Whitney with all written feedback emailed to Ramachandran; (3) provide Whitney with all of his protected breaks; or (4) assign him a mutually agreed-upon mentor in the Anesthesiology Department.

8

As an initial matter, Montefiore did not agree to provide all of these accommodations. Whitney cites a November 2020 letter from Montefiore that granted most of his requested accommodations in full or in part. The letter listed each of Whitney's requests "specifically based upon the list … shared from Dr. Whitney's psychiatrist." App'x 970. But Montefiore did not agree to grant the accommodations precisely as Whitney requested. Instead, Montefiore included a response below each request explaining the extent to which it would grant the request. For example, below Whitney's request for a mutually agreed-upon mentor, Montefiore responded that it would assign Whitney one mentor in the Anesthesiology Department and one mentor for each rotation. Montefiore never agreed to assign a mutually agreed-upon mentor. Nor was it required to do so. "[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95.

To the extent that Whitney relies on Montefiore's failure to implement the accommodations perfectly, that argument fares no better. Whitney argues, for example, that Ramachandran did not send Whitney all of the email feedback she received about him. But Whitney admitted during his deposition that he received feedback "most days and that was fine." App'x 1954. "[A] granted accommodation … need not be perfect." *Porter*, 92 F.4th at 155. The relevant inquiry is whether the accommodations enabled Whitney "to perform the essential functions of [his] position." *Id.* (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). Whitney has not identified evidence that would allow a jury to conclude that Montefiore's failure to comply perfectly with the granted accommodations somehow rendered the accommodations as a whole unreasonable. *Cf. id.* (stating that "encroachments" on an accommodation that "may have been annoying or stressful did not make the accommodations ineffective").

\*　　\*　　\*

We have considered Whitney's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court